UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALVIN BRIAN INTERNATIONAL COMPANY, a Hong Kong Corporation,<br><br>   Plaintiff,<br>v.<br>GUSTTO, INC., a California Corporation,<br><br>   Defendant. | Case No. 3:13-cv-0218-GPC-BLM<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO AMEND DEFAULT JUDGMENT**<br><br>**(ECF NO. 28)** |

**INTRODUCTION**

Calvin Brian International Company ("Plaintiff") moves the Court, pursuant to Federal Rule of Civil Procedure 69(a), to amend the Default Judgment against defendant Gustto, Inc. ("Gustto") to add, under an alter-ego theory, Agathe Planchon ("Planchon") as a judgment debtor. Having considered Plaintiff's arguments and evidence, and for the reasons that follow, the Court will **GRANT** Plaintiff's Motion.

**BACKGROUND**

**I.  Factual Background**

Plaintiff is a Hong Kong corporation. Gustto is a California corporation, of which Planchon is the president, CEO, and 100% shareholder. Planchon is a citizen of France and a resident of California.

From January through October 2011, Plaintiff manufactured and shipped handbags to Gustto pursuant to a manufacturing agreement entered into by Plaintiff and Gustto on February 19, 2011. The handbags were to bear the "Gustto" and "Miss Gustto" trademarks. Gustto failed to pay for most, if not all, of these handbags, incurring over $300,000 in unpaid invoices. In September 2011, Planchon sent an email to one of Plaintiff's representatives, Calvin Wong ("Wong"), stating that Planchon was arranging for a third party to send Wong a draft letter of credit for his review.

Planchon created the "Gustto" trademark and registered it with herself as the owner in November 2007. Sometime thereafter, Planchon licensed the trademark to Gustto. In 2009, Planchon created the "Miss Gustto" trademark but did not formally register that trademark until around February 2011.

On February 1, 2011, Planchon formed Brand Buzz Management, LLC ("Brand Buzz") (a Delaware limited liability company) to own and license the "Gustto" and "Miss Gustto" trademarks. After forming Brand Buzz, Planchon assigned the "Gustto" trademark to Brand Buzz, which assignment Planchon recorded in the U.S. Patent & Trademark Office. As mentioned above, Planchon also formally registered the "Miss Gustto" trademark around this time, listing Brand Buzz as the owner.

## II.  Procedural Background

Plaintiff initially sued Gustto, Planchon, and Brand Buzz in the District Court for the Southern District of New York but later voluntarily dismissed that suit in favor of this suit. On January 28, 2013, Plaintiff filed a complaint against Gustto only for breach of contract and common-count claims for goods sold and delivered at agreed price, open book account, and account stated. On April 11, 2013, Gustto filed an answer and a counterclaim, alleging the handbags Plaintiff shipped to Gustto were defective. On May 22, 2013, Magistrate Judge Major held an early neutral evaluation conference, at which Planchon disclosed she was considering filing for bankruptcy protection on behalf of Gustto.

In August 2013, counsel for Gustto moved for, and was granted leave to, withdraw as counsel because of Gustto's inability to pay attorney fees. In granting counsel's motion to withdraw, the Court granted Gustto a period of time to retain counsel in light of the Civil Local Rule precluding business entities from appearing pro se. When Gustto failed to retain counsel, Plaintiff moved for default judgment. On April 3, 2014, the Court entered default judgment against Gustto in the total amount of $377,712.45, including $75,542.49 in prejudgment interest. On April 30, 2014, Plaintiff filed the instant request to add Planchon to the Default Judgment as a judgment debtor.

## DISCUSSION

**I.    Legal Standard**

Federal Rule of Civil Procedure 69(a) provides, in relevant part, that "[t]he procedure on execution [of judgments]–and in proceedings supplementary to and in aid of judgment or execution–must accord with the procedure of the state where the court is located." Thus, where a state law such as California's allows a judgment creditor to add a judgment debtor to a judgment on an alter ego theory, it is appropriate to do so under Rule 69(a). Cigna Property & Cas. Ins. Co. v. Polaris Pictures Corp., 159 F.3d 412, 421 (9th Cir.1998).

California Code of Civil Procedure section 187 allows the amendment of a judgment to add a non-party alter ego as a judgment debtor. Toho-Towa Co., Ltd. v. Morgan Creek Prods., Inc., 217 Cal. App. 4th 1096 (2013). The judgment creditor must show that (1) "the party to be added satisfies the alter ego criteria," and (2) "the new party had control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability involved." Bank of Montreal v. SK Foods, LLC, 476 B.R. 588, 597 (N.D. Cal. 2012) (citing NEC Elecs. Inc. v. Hurt, 208 Cal. App. 3d 772, 778-79 (1989); Katzir's Floor & Home Design, Inc. v. M-MLS.com, 394 F.3d 1143, 1148-49 (9th Cir. 2004)).

The alter-ego doctrine applies where "(1) such a unity of interest and ownership

exists that the personalities of [a] corporation and [an] individual are no longer separate, and (2) an inequitable result will follow if the acts are treated as those of the corporation alone." RRX Indus., Inc. v. Lab-Con, Inc., 772 F.2d 543, 545-46 (9th Cir. 1985) (citing Automotriz del Golfo de California S.A. de C.V. v. Resnick, 47 Cal. 2d 792, 796 (1957); U.S. Fire Ins. Co. v. Nat'l Union Fire Ins. Co., 107 Cal. App. 3d 456, 460 (1980)).

To determine whether an individual and a corporation share such a unity of interest and ownership that the personalities of the two are no longer separate, courts have considered the following, non-exhaustive list of factors:

[1] Commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses;

[2] the treatment by an individual of the assets of the corporation as his own;

[3] the failure to obtain authority to issue stock or to subscribe to or issue the same;

[4] the holding out by an individual that he is personally liable for the debts of the corporation;

[5] the failure to maintain minutes or adequate corporate records, and the confusion of the records of the separate entities;

[6] the identical equitable ownership in the two entities;

[7] the identification of the equitable owners thereof with the domination and control of the two entities;

[8] identification of the directors and officers of the two entities in the responsible supervision and management;

[9] sole ownership of all of the stock in a corporation by one individual or the members of a family;

[10] the use of the same office or business location;

[11] the employment of the same employees and/or attorney;

[12] the failure to adequately capitalize a corporation;

[13] the total absence of corporate assets, and undercapitalization;

[14] the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation;

[15] the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities;

[16] the disregard of legal formalities and the failure to maintain arm's length relationships among related entities;

[17] the use of the corporate entity to procure labor, services or merchandise for another person or entity;

[18] the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another;

[19] the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions;

[20] and the formation and use of a corporation to transfer to it the existing liability of another person or entity.

Bank of Montreal v. SK Foods, LLC, 476 B.R. 588, 597-98 (N.D. Cal. 2012) (citing Zoran Corp. v. Chen, 185 Cal. App. 4th 799, 811-12 (2010)).

With regard to an inequitable result, the alter-ego doctrine "does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form." Sonora Diamond Corp. v. Super. Ct., 83 Cal. App. 4th 523, 539 (2000).

**II.     Analysis**

Under the foregoing legal framework, the Court will first address whether Plaintiff has satisfied the alter-ego criteria. The Court will thus assess whether Planchon and Gustto share such a unity of interest and ownership that their two personalities are no longer separate, after which the Court will assess whether failure to apply the alter-ego doctrine would produce an inequitable result. If Plaintiff has satisfied the alter-ego criteria, then—to determine if Planchon may be added to the Default Judgment as a judgment debtor—the Court will determine whether Planchon had sufficient control of this litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability involved.

### A. Alter Ego

#### 1. Unity of Interest & Ownership

Plaintiff relies on the following facts, as supported by Planchon's declarations filed in this and the New York action, to demonstrate that Planchon and Gustto share such a unity of interest and ownership that their personalities are no longer separate: (1) Planchon is the 100% shareholder of Gustto and the majority member of Brand Buzz; (2) Planchon transferred ownership of the "Gustto" and "Miss Gustto" trademarks to Brand Buzz immediately before entering into the manufacturing agreement with Gustto in February 2011; (3) Planchon represented to Plaintiff's representative, Wong, in an email that a third party would be sending Wong a draft letter of credit; (4) a private investigator reports seeing Planchon in a New York City office after entry of the Default Judgment, where the person identified as Planchon reportedly said, "This is Gustto"; (5) correspondence and judgment discovery requests mailed to and served on Gustto and Planchon at this New York City office have been rejected; (6) there is no indication as to what happened to the handbags Plaintiff manufactured and delivered to Gustto; (7) Planchon reported at the ENE in this case that Gustto had no assets and that Planchon was considering filing for bankruptcy on behalf of Gustto; and (8) after transferring the "Gustto" and "Miss Gustto" trademarks to Brand Buzz, Gustto was left as an empty shell.

Applying the unity-of-interest factors to these facts, the Court finds Plaintiff has established that Planchon and Gustto share such a unity of interest and ownership as to be indistinguishable. Planchon formed Gustto and owns 100% of Gustto's shares. Planchon caused Gustto to enter into a manufacturing agreement with Plaintiff <u>after</u> Planchon had transferred ownership of the "Gustto" and "Miss Gustto" trademarks to Brand Buzz—another company controlled solely by Planchon. Planchon accepted handbags from Plaintiff for nearly a year without payment and without returning the handbags to Plaintiff. Because Planchon represented at the ENE in this case that Gustto is assetless, the Court infers that Planchon diverted the handbags (or proceeds

from the handbags) to herself or third parties. In short, while it appears Planchon continues to operate Gustto, the evidence before the Court indicates Planchon has left Gustto an empty shell.

### 2. Inequitable Result

The Court finds that an inequitable result would follow if Planchon is not treated as the alter ego of Gustto. The Court finds it would be inequitable to allow Planchon to, not only transfer ownership of the "Gustto" and "Miss Gustto" trademarks to Brand Buzz <u>before</u> entering into the manufacturing agreement with Plaintiff, but to then leave Gustto assetless while apparently continuing to operate Gustto. The Court finds such evidence indicates that Planchon is attempting to avoid execution of the Default Judgment by hiding behind Gustto's corporate form. Further evidence of Planchon's attempt to avoid execution is the fact that, even though it appears Planchon is operating Gustto out of the New York City office, both she and Gustto have rejected Plaintiff's correspondence and requests for judgment discovery.

### B. Control of Litigation

The Court finds Planchon had sufficient control of this litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability involved. Planchon caused Gustto to retain counsel at the inception of this case, appeared at the ENE, and submitted a declaration in support of defense counsel's motion to withdraw. Given that Planchon is the 100% shareholder, CEO, and president of Gustto, Planchon had complete control of this litigation. That Planchon decided to allow a default judgment to be entered against Gustto is of no moment. The Court finds Planchon has been provided sufficient notice of these proceedings, from the entry of default to the present, to participate thoroughly or, at a minimum, to oppose Plaintiff's instant request to add Planchon as a judgment debtor.

### CONCLUSION & ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Alter Judgment, (ECF No. 28), is **GRANTED**;

    2.    On or before July 25, 2014, Plaintiff shall lodge, via the Court's e-file email address (efile_curiel@casd.uscourts.gov), a proposed amended default judgment in either Word or WordPerfect format;

    3.    The hearing on Plaintiff's Motion, currently set for July 18, 2014, is **VACATED**.

DATED: July 17, 2014

HON. GONZALO P. CURIEL
United States District Judge